# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2018, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory W. Black
Plainfield, Indiana

ATTORNEYS FOR APPELLEES:
ANGELA F. TRAPP AND TRAPP
LAW, LLC

Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

Nicholas W. Levi
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
LISA ALEXANDER

Zachary A. Smith
Trapp Law, LLC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Valerie D. Alexander, *Appellant-Plaintiff,* | December 5, 2018 |
| v. | Court of Appeals Case No. 18A-PL-1257 |
| | Appeal from the Marion Superior Court |
| Angela F. Trapp; Trapp Law, LLC; and Lisa Alexander, *Appellee-Defendants.* | The Honorable James A. Joven, Judge |
| | Trial Court Cause No. 49D13-1711-PL-042627 |

**Tavitas, Judge.**

## Case Summary

Valerie Alexander ("Valerie") appeals the trial court's order granting a motion for judgment on the pleadings under Indiana Trial Rule 12(C) filed by Angela Trapp, Trapp Law, LLC ("Trapp Law"), and Lisa Alexander ("Lisa"). We affirm.

## Issues

Valerie raises many issues on appeal.[1] We consolidate and restate these issues as follows:

    I. Whether the trial court erred in granting the motion for judgment on the pleadings filed by Trapp and Trapp Law.

    II. Whether the trial court erred in granting the motion for judgment on the pleadings filed by Lisa.

## Facts

Valerie and Lisa are sisters and the daughters of Wayne Alexander ("Wayne"). In 2016, Valerie became Wayne's fiduciary and began caring for Wayne full-time. In June 2017, Lisa hired Trapp and Trapp Law to file an emergency petition for appointment of temporary guardianship of Wayne, whom Lisa

---

[1] We find Valerie's brief to be difficult to understand due to numerous errors and stream of consciousness arguments. In the future, we direct counsel to review Indiana Appellate Rule 46, which requires that "[t]he argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."

described as a "disabled adult." Appellant's App. Vol. II p. 46. Lisa's petition alleged that Valerie spent a significant amount of Wayne's money and that "Valerie is financially abusing Father, and causes waste to Father's estate."[2] *Id.* at 48. Lisa also alleged that Valerie has denied other members of the family access to the house to visit Wayne and the opportunity to communicate with Wayne via telephone. The trial court conducted a hearing on the guardianship matter on August 7, 2017.

[4] During the hearing, the following exchange occurred between Valerie's counsel, Trapp, and the trial court:

> [Valerie's Counsel]: Your honor, I have a motion in limine.
>
> THE COURT: Okay.
>
> [Valerie's Counsel]: I would like the court to bar any reference to murder or child death syndrome from this witness because there are [sic] no evidence of any of that.
>
> [Trapp]: Your honor, he is wishing to avoid a Rule 609 impeachment of Valerie Alexander in 1977 her husband was killed, I believe the actual like [sic] investigation from the police was justifiable homicide, they were in the process of divorce, they

---

[2] Lisa's petition does not allege a specific amount that Valerie is abusing or wasting, but does allege, among other things, that: "Valerie spent $156,000.00 of money that was left to Father in trust after the death of Petitioner's Mother"; "Petitioner personally observed Valerie use Father's bank card without him present and withdraw funds from his bank account"; "Valerie has spent nearly $300,000.00 of Father's money since 2015"; and "Valerie pays herself an annual income of $35,000.00 per year to be Father's caretaker, and she pays herself an additional $600.00 a month for his living expenses and she withdraws $200.00 a week for meals to feed Father and herself." Appellant's App. Vol. II p. 47.

were separating, she murdered him for lack of a better word with a gun . . . .

[Valerie's Counsel]: This is outrageous, your honor, it should be stricken.

[Trapp]: Under Rule 609, we are allowed to bring that up, there's no statute of limitations on it, it's our position that the justifiable homicide is questionable, the only reason she wasn't charged was because her daughter, [], was present and said that her mother did it in self-defense. Then there's also another boyfriend that she financially benefited from him dying too who committed suicide and she inherited all this money from him too, so Wayne Alexander will be the third person she's inheriting large sums of money from.

Appellant's App. Vol. II p. 20.

[5] On November 15, 2017, Valerie filed a complaint for Count I, defamation; Count II, defamation *per se*; and Count III, defamation *per quod* against Trapp, Trapp Law, and Lisa based on the statements at the hearing. In her complaint, Valerie alleged that the words are "false [and] malicious." *Id.* at 15. Valerie further alleged:

* * * * *

5. The statements of Angela Trapp, planted deliberately by Lisa, were intended to and did lower the esteem of Valerie in the eyes of the community such that among other things [t]he Judge and Guardian Ad Litem in the case have become biased against Valerie. This is just the tip of the iceberg. Damage is permanent, published to vital third parties by oral words from counsel to

client, both bent on damage to plaintiff, harm to her status, emotion, property.

6. The statements at bar alternatively are false, defamatory, malicious, defamatory *per se,* defamatory *per quod.* The statements were made with reckless disregard of truth or investigation, all of which could have been made easily. But truth was not the goal of defense. Harm was. The defendants were hell bent on placing Lisa in charge of her father, harming Valerie in the process. Both defendants are responsible equally for the malice, falsity, defamation, recklessness.

7. Lisa [and Trapp], had no basis for their case. The words of the lawyer are the words of the client. Publication of the defamation takes two forms here: Lisa to Angela, Angela to all in [t]he Court of GU 64 and all who will read the Record at bar in GU 64 and here.[3]

*Id.* at 16.[4]

On January 16, 2018, Trapp and Trapp Law filed a motion for judgment on the pleadings. The trial court held a hearing on the motion filed by Trapp and Trapp Law on March 14, 2018. At the hearing, Lisa moved to join the motion for judgment on the pleadings filed by Trapp and Trapp Law based on the arguments at the hearing.

---

[3] "GU 64" is a reference to the cause number in the underlying guardianship case.

[4] All grammar, punctuation, spelling, and capitalization in original.

[7]     On March 29, 2018, the trial court entered an order granting judgment on the pleadings for Trapp and Trapp Law. The trial court concluded:

> The Court notes that the statements of Defendant Trapp, which Plaintiff Alexander challenges as defamatory *per se,* were statements made in the course of a judicial proceedings, [sic] a guardianship case. Defendant Trapp's statements set forth the theory of the case she was presenting on behalf of her client, Defendant Alexander, in that judicial proceeding. As such, Defendant Trapp's statements fall within the protection of an absolute privilege for relevant statements made during the course of judicial proceedings. *Estate of Mayer v. Lax, Inc.,* 998 N.E.2d 238, 247 (Ind. Ct. App. 2013). Plaintiff Alexander urges the Court to abrogate the absolute privilege for statements made during judicial proceedings. This Court cannot and will not ignore binding precedent of the Indiana Supreme Court and Indiana Court of Appeals.

*Id.* at 8-9.

[8]     The trial court also ordered Valerie to show cause, within fifteen days of the order, why the trial court should not also grant the judgment on the pleadings filed by Lisa.[5] Valerie responded to the court's show cause order, arguing that Lisa waived attorney-client privilege when Lisa "set[] in motion her lawyer's utterances to a Public Court of Law [that] Valerie murdered Valerie's husband

---

[5] Presumably, Valerie was given additional time to respond to the motion for judgment on the pleadings filed by Lisa, as Lisa moved for the judgment orally in court at the end of the hearing on the motion for judgment on the pleadings filed by Trapp and Trapp Law.

when such is known not so." Appellant's App. Vol. II p. 41. Valerie did acknowledge there was "no publication" as to Lisa's statements. *Id.*

[9] On May 2, 2018, the trial court entered an order granting judgment on the pleadings for Lisa. The trial court determined that, because the statements "were made in the course of judicial proceedings," the statements fell "within the protection of an absolute privilege . . . ." *Id.* at 11. The trial court concluded:

> [s]ignificantly, as Plaintiff Alexander notes in her response to the Court's show cause order, Defendant Alexander "uttered nothing in Court . . . ." In fact, Plaintiff Alexander's complaint for defamation contains no allegation that Defendant Alexander made any statement that could constitute a defamatory statement. Instead, in her response to the show cause order, Plaintiff Alexander would have the Court infer that Defendant Alexander made a defamatory statement to Defendant Trapp, her lawyer, causing Defendant Trapp to make that same statement in open court. Such an inference is unreasonable. Moreover, a plaintiff must specifically state the alleged defamatory statement in the complaint. *Trail v. Boys & Girls Clubs,* 845 N.E.2d 130, 136 (Ind. 2006). Plaintiff Alexander's complaint is deficient in this respect. The Court concludes that allowing Plaintiff Alexander to replead the complaint to include the alleged defamatory statement would be futile, as any such statement would still fall within the protection of an absolute privilege for relevant statements made during the course of judicial proceedings.

*Id.* at 11. Valerie now appeals.

**Analysis**

Valerie appeals the trial court's grant of motions for judgment on the pleadings filed by Trapp, Trapp Law, and Lisa. "A motion for judgment on the pleadings under Trial Rule 12(C) tests the sufficiency of a claim or defense presented in the pleadings and should be granted 'only where it is clear from the face of the complaint that under no circumstances could relief be granted.'" *KS&E Sports v. Runnels,* 72 N.E.3d 892, 898 (Ind. 2017) (citing *Veolia Water Indianapolis, LLC v. National Trust Ins. Co.,* 3 N.E.3d 1, 5 (Ind. 2014)). Accordingly, we accept as true the facts alleged in Valerie's complaint. *See id.* We review a Rule 12(C) ruling *de novo. See id.*

### *A. Trapp and Trapp Law's motion for judgment on the pleadings*

"The absolute privilege doctrine applies to defamation claims, torts related to defamation, and torts relying upon defamatory statements as proof of wrongdoing." *Eckerle v. Katz & Korin, P.C.,* 81 N.E.3d 272, 278 (Ind. Ct. App. 2017) (citing *Estate of Mayer v. Lax,* 998 N.E.2d 238, 247 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied.* In *Hartman v. Keri,* our supreme court explained:

> Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements . . . . The reason upon which the rule is founded is the necessity of preserving the due administration of justice, by providing actors in judicial proceedings with the freedom to participate without fear or future defamation claims.

883 N.E.2d 774, 777 (Ind. 2008) (citations omitted). There is no dispute these statements were made during a judicial proceeding. Instead, Valerie argues that these statements should not be protected by the absolute privilege that Indiana law affords to statements made at judicial proceedings because the statements were not "relevant" to the proceeding. Appellant's Br. p. 12.

[12] "For immunity from liability to exist based on absolute privilege, the statement in question must be 'relevant and pertinent to the litigation or bear some relation thereto.'" *Eckerle,* 81 N.E.3d at 280 (quoting *Estate of Mayer,* 998 N.E.2d at 247). "Courts favor a liberal rule in favor of finding statements to be relevant and pertinent." *Estate of Mayer,* 998 N.E.2d at 247 (citing *Miller v. Reinert,* 839 N.E.2d 731, 735 (Ind. Ct. App. 2005)). "Statements in a judicial proceeding will not enjoy an absolute privilege only if they are so palpably irrelevant to the subject matter of the case that no reasonable person could doubt their irrelevancy and impropriety." *Id.* "Lawsuits are not peace conferences. Feelings are often wounded and reputations are sometimes maligned." *Estate of Mayer,* 998 N.E.2d at 247 (citing *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.,* 452 N.E.2d 989, 998 (Ind. Ct. App. 1983)).

[13] Here, the statements made by Trapp were relevant to the proceeding and protected by absolute privilege. First, it seems difficult for Valerie to argue that the statements were not relevant, when Valerie's counsel sought to preclude

references to "murder" and "child death syndrome" before they were even raised by Lisa or Trapp.[6] Appellant's App. Vol. II p. 20.

[14] Second, as discussed at the hearing on the motion for judgment on the pleadings, Trapp wanted to address the alleged murder as part of impeachment evidence under Indiana Rule of Evidence 609. Indiana Rule of Evidence 609(a) states:

> [f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.

It is not clear from the limited record before us whether Trapp or Lisa ultimately attempted to introduce any evidence related to Trapp's statements, and, if so, whether the trial court allowed the evidence to be admitted. In fact, it is not clear whether Valerie has been convicted of a crime related to the death of her husband, much less a crime contemplated by Rule 609. However, the answers to these questions would not change our analysis because the statements still concerned potential impeachment evidence—even if that evidence was not ultimately introduced or admitted. We, therefore, cannot say

---

[6] We draw this conclusion based on the limited record before us. Appellant's appendix includes the transcript pages from the hearing that include the allegedly defamatory statements, but we do not have other pages of the transcript. From the record, it appears to us that Valerie was the first one to raise accusations of murder.

the statements fail to meet the low threshold for relevancy under the absolute privilege doctrine. We find the statements are protected by absolute privilege because they were relevant to the proceeding.

[15] Valerie also argues we should change the law from absolute privilege to qualified privilege for statements made in judicial proceedings as "[t]his extreme case makes what should be the law plain." Appellant's Br. Vol. II p. 32. Valerie states:

\* \* \* \* \*

> For now, anyone enmeshed in our court system may concoct about anything he or she desires, when not "sworn in." All you need do is imagine a circumstance tied by myth to matters under judicial scrutiny. This can be lethal. See suicide over a lie, *The Children's Hour,* Shirley MacLaine. Words take a toll. Must the law be complicit? Not when the law can avoid it. Dickens wrote the law is an a\*\*. It also can be a servant, a coat of armor. We decide as a profession which it shall be.

\* \* \* \* \*

> The solution: abandon absolute privilege for judicial proceedings. Forget broad latitude for relevance. Lies cannot be relevant. To say a lie is relevant is to say it is real. But it is not. One may as well say a rock has emotion or a thought has protein. The proposition is preposterous.

Appellant's Br. p. 33.

To the extent Valerie is asking us to deviate from our clearly-settled precedent on this issue, we decline to do so. *See Gill v. Gill,* 72 N.E.3d 945, 949 (Ind. Ct. App. 2017) (finding that "as Indiana's intermediate appellate court, we are bound to follow Indiana Supreme Court precedent"). We also disagree with Valerie's assertion that lawyers would be able to say anything and defame another party under the veil of privilege. Our courts have already identified situations in which derogatory statements or allegations are not relevant to the judicial proceeding. *See Stahl v. Kincade,* 192 N.E.2d 493, 497 (Ind. Ct. App. 1963) (finding that, in a suit to enjoin a property owner from maintenance of a basketball court, a counterclaim to enjoin the complaining party from certain immoral conduct was "not relevant or pertinent to the matter in controversy and had no relation thereto"). Accordingly, some speakers who make statements that do not meet the low "relevance" standard would not enjoy absolute privilege. This is not one of those cases.

### B. Lisa's motion for judgment on the pleadings

Lisa was entitled to judgment on the pleadings for the same reasons set forth above. *See Eckerle,* 81 N.E.3d at 282 (noting that absolute privilege "attaches to judges, attorneys, parties, and witnesses in connection with a judicial proceeding") (citations omitted). We, therefore, do not address Valerie's argument regarding the requirement that defamatory statements be specifically

alleged, but we do note that Lisa does not actually say anything at the hearing, according to the transcript provided by Valerie.[7]

## Conclusion

[18] For the foregoing reasons, we find that the trial court properly granted the motions for judgment on the pleadings under Indiana Trial Rule 12(C) filed by Trapp, Trapp Law, and Lisa.  Accordingly, we affirm.

[19] Affirmed.

Brown, J., and Altice, J., concur.

---

[7] We also reject Valerie's argument regarding Lisa's waiver of attorney-client privilege which is titled, "Lisa Waived Attorney Client Privilege With Ms. Trapp in Setting Ms. Trapp Out to Blare the Lie in Open Court." Appellant's Reply Br. p. 17.  This argument is incorrect.  Lisa has not waived attorney-client privilege by giving Trapp, Lisa's attorney, information relevant to Lisa's proceeding, which Trapp then used in the proceeding, even if the information turned out to be incorrect.