**NORTHWEST TOWING &
RECOVERY, Appellant–
Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A02–0905–CV–409.**

Court of Appeals of Indiana.

Jan. 11, 2010.

Bruce N. Munson, Muncie, IN, Attorney for Appellant.

Jason A. Childers, Hulse Lacey Hardacre, Austin Sims & Childers, Anderson, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Sometimes actions that are merely tangential in nature can produce Solomonic judicial actions and results. Today we are called upon to review the resolution of a dispute regarding a vehicle that was towed to and stored at Northwest Towing & Recovery's (Northwest) facility at the Muncie Police Department's request following a deadly traffic accident that ultimately resulted in a criminal conviction against the driver of the vehicle. The vehicle's owner, who was not a party to the criminal proceedings, requested the return of the vehicle, and Northwest sought to recover its unpaid storage fees in excess of $3600.

Appellant, Northwest appeals the denial of its motion to correct error after the trial

court limited its storage-fee lien to $1500 in accordance with Indiana Code section 32–33–10–5(b) against appellee Frances Brinkley, the owner of the vehicle. Specifically, Northwest maintains that the judgment must be set aside because Frances was not the "real party in interest" in accordance with Indiana Trial Rule 17(A). Northwest also asserts that it had a lien on the vehicle pursuant to Indiana Code section 9–22–5–15, exclusive of the limiting provisions of Indiana Code section 32–33–10–5(b), and that the trial court's order requiring it to transfer the title back to Frances violated its due process rights. Frances cross appeals, claiming that the trial court abused its discretion in ordering her to pay anything for the return of her vehicle.

Concluding that the trial court properly ordered Frances to pay Northwest's storage fees in an amount that did not exceed $1500, and finding no other error, we affirm the judgment of the trial court.

### FACTS

This appeal stems from the appeal in *Brinkley v. State*,[1] where we determined, among other things, that the evidence was sufficient to support Steven Brinkley's convictions for Failure to Return to the Scene of an Accident Resulting in Death,[2] a class C felony, and Obstruction of Justice,[3] a class D felony.

Northwest contracts with the City of Muncie for the towing of vehicles. Northwest's indoor storage rate is $20 per day, and the auto owner pays those fees to Northwest once he or she retrieves the vehicle. In October 2006, the 2005 Nissan Altima that Brinkley had driven in the accident, which was owned by his mother, Frances, was towed to Northwest's facility at the Muncie Police Department's request. The accrued storage fees in excess of $3600 have not been paid.

As set forth in the trial court's order of March 6, 2009, additional undisputed facts giving rise to this appeal are as follows:

On October 8, 2006, the Nissan was involved in a fatal traffic collision ... in Muncie. Steven Brinkley identified himself as the driver and turned himself in ... on October 11, 2006.

The Muncie Police Department engaged Northwest to tow the Nissan to the Northwest storage facility, pursuant to a contract between the Department and Northwest. The Muncie Police Department asked Northwest to store the vehicle in the inside storage unit, which cost[s] $20 per day per the contract between the Department and Northwest.

Northwest also billed a $15.00 "City Fee," the $125.00 initial towing charge, and a $110.00 towing charge to take the Nissan back and forth to Bill McCoy Ford.

On October 20, 2006, ... Steven Brinkley, ... filed a Motion for Preservation of Evidence, asking the Court to order the Nissan vehicle held for inspection by the defense.

On November 16, 2006, the Court issued an Order on Motion for Preservation of Evidence. The Court addressed the issues about holding the Nissan for inspection and testing but did not address any issues about storage expenses and who was to pay Northwest Wrecker for its services.

On January 8, 2007, the State filed a Motion for Amended Order on Motion

---

**1.** No. 18A02–0709–CR–826, 889 N.E.2d 925 (Ind. Ct.App. June 30, 2008).

**2.** Ind.Code § 9–26–1–8.

**3.** Ind.Code § 35–44–3–4(a)(3).

for Preservation of Evidence. The State alleged Northwest was storing the Nissan in the "interior police bay" and was charging the Muncie Police Department $20.00 per day for storage. The State requested the Court to order the Nissan stored in a secure outside lot.

[A]t no time up to this point did the State ask the Court to release the vehicle to the Defendant or his mother, nor did the State ask the Defendant or his mother to pay the charges. All the State asked the Court to do was to order the vehicle to be stored outside, not inside, because outside storage was less expensive.

. . .

Brinkley went to trial, was convicted on both counts, and was sentenced . . . on August 27, 2007. Brinkley could have requested at the sentencing hearing that the Court order the vehicle released to his mother at that time. The Court is not being critical; obviously, Defendant's family's thoughts were for the Defendant and whether he was going to prison. All the Court is saying is, the sentencing hearing would have been an appropriate time to request this order. It would have greatly reduced the fees and expenses now being claimed by all parties concerned with this vehicle.

After [Brinkley's appeal], . . . Frances Brinkley, Defendant's mother and the vehicle's owner, testified she called the Court and inquire as to the vehicle's return. The Court referred her to her attorney.

On September 15, 2008, attorney Steven Smith filed a Motion on Mrs. Brinkley's behalf to return the vehicle to her. The Court issued an Order on October 28, 2008, ordering the 2005 Nissan Altima to be released to Mrs. Brinkley.

Northwest's representative testified shortly after receiving this court order from Mrs. Brinkley, he had the Nissan titled into Northwest's name.

On December 23, 2008, attorney Smith filed a Motion to Show Cause, alleging Northwest . . . had refused to release the vehicle to Mrs. Brinkley. The Court set the matter for hearing on February 2, 2009.

Appellant's App. p. 28–30. Following the hearing, the trial court ordered Northwest to transfer the vehicle's title back to Frances. Northwest was also ordered to release the vehicle to Frances after she paid Northwest a total of $1750 for the towing, storage, and city fees.

In arriving at this conclusion, the trial court observed that

3. Northwest has not presented any authority to the Court showing it properly acquired title to this vehicle. Mrs. Brinkley and the defendant did not ask Northwest to render any services. Northwest was acting per its contract with the Muncie Police Department. . . .

. . .

5. The Court notes no one disputes the maximum storage fee Northwest can charge to one person would have been $1500.00. The most Mrs. Brinkley can be charged by statute for the Nissan's storage is $1,500.00

6. The Muncie Police Department should bear the storage expenses from the date the vehicle arrived until August 27, 2007, the sentencing date. Mrs. Brinkley should pay for the storage from August 27, 2007, until October 28, 2008, at $20.00 per day, which equals $3,580.00. The maximum fee under the statute is $1,500.00. Therefore, the Court finds a reasonable storage fee to assess to Mrs. Brinkley is $1,500.00. The Muncie Police Department is re-

sponsible for any other fees, but the Court will leave it to Northwest to negotiate the balance of any fee Northwest wants to charge to the City.

7. Mrs. Brinkley should pay the $125.00 tow bill, the $110.00 tow bill for the McCoy trip, and the $15.00 "City Fee," as her son's actions caused these expenses.

8. Northwest must bear the expenses incurred from October 28, 2008, when the Court ordered the vehicle returned to Mrs. Brinkley, until it returns the vehicle to her. This is evidence from the fact that Northwest put the vehicle in its own name and acted as its owner during this time period.

Northwest appeals, and Frances cross-appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

As Northwest is appealing from the denial of its motion to correct error, we review those rulings for an abuse of discretion. *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion exists when the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *In re Guardianship of A.L.C.*, 902 N.E.2d 343, 356 (Ind.Ct.App.2009).

### II. Northwest's Claims

### A. Real Party in Interest

■ Northwest first argues that the trial court's order cannot stand because Frances was not a party to the criminal proceedings. Therefore, Northwest contends that the judgment must be vacated because it was improperly "dragged into a criminal proceeding by a person not a party to that proceeding," in violation of Trial Rule 17(A). Appellant's Br. p. 3.

Trial Rule 17(A) provides that

(A) Every action shall be prosecuted in the name of the real party in interest.

(1) An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

(2) ... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. Such ratification, joinder or substitution shall have the same effect as if the action had been commended initially in the name of the real party in interest.

Notwithstanding Northwest's claim that Trial Rule 17(A) precluded the trial court from hearing this matter, we note that a criminal court may exert jurisdiction over persons not parties to the original action in some instances. *See WTHR–TV v. Cline*, 693 N.E.2d 1, 6 (Ind.1998) (observing that when non-parties to a dispute "are involuntarily dragged into court, ... they are no less entitled to any protections the Trial Rules afford").

■ Although Northwest contends that the trial court should not have heard this matter because Frances did not properly intervene in the case, it is apparent that Northwest has invited the alleged error.

Under the doctrine of invited error, a party may not take advantage of an error that he or she commits or invites or that is the natural consequence of his or her own neglect or misconduct. *Wright v. State,* 828 N.E.2d 904, 907 (Ind.2005). Moreover, the issue is not reviewable on appeal. *Batterman v. Bender,* 809 N.E.2d 410, 412 (Ind.Ct.App.2004).

In this case, both Northwest and Frances were represented by counsel throughout the proceedings and at the February 2, 2009, hearing. The trial court permitted the parties to present evidence, and it issued orders regarding the storage of the vehicle throughout the proceedings. Northwest made no objection under Trial Rule 17(A) until the trial court ruled against it. Thus, to the extent that there was any error pursuant to Trial Rule 17, Northwest expressly and implicitly invited the alleged error by participating in the proceedings and failing to make a timely objection. Therefore, Northwest has waived the issue and we decline to review the alleged error. *Id.*

### B. Validity and Amount of Lien

Northwest next claims that even if this matter was properly before the trial court, the order limiting its storage charges to $1500 was erroneous. Northwest argues that the trial court failed to acknowledge that there is no limit on vehicle storage charges in light of Indiana Code section 9–22–5–15(a).

This statute provides that

(a) An individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle, trailer, semitrailer, or recreational vehicle *at the request of the person who owns the vehicle has a lien on the vehicle to the reason-*

*able value of the charges for the labor, materials, storage, or repairs.*

I.C. § 9–22–5–15(a) (emphasis added).

However, another statute, Indiana Code section 32–33–10–5(b), which became effective in 2005, provides that

(a) A person engaged in:

(1) towing, repairing, storing, servicing, or furnishing supplies or accessories for motor vehicles, . . . or

(2) maintaining a motor vehicle garage . . .;

has a lien on any motor vehicle . . . towed, stored, repaired, serviced, or maintained for the person's reasonable charges for the towing, repair work, storage, or service, including reasonable charges for labor, for the use of tools, machinery, and equipment, and for all accessories, materials, gasoline, oils, lubricants, and other supplies furnished in connection with the towing, repair, storage, servicing, or maintenance of the motor vehicle. . . .

(b) The costs of storing a motor vehicle may not exceed one thousand five hundred dollars ($1,500).

In general, statutes relating to the same general subject matter are in pari materia, and should be construed together to produce a harmonious statutory scheme. *Sanders v. State,* 466 N.E.2d 424, 428 (Ind.1984). However, when two statutes conflict, a statute dealing with a subject in a specific manner controls over a statute dealing with the same subject in general terms. *Isham v. Chaffee,* 572 N.E.2d 539, 540 (Ind.Ct.App.1991). A general statute does not overrule or supersede a specific statute unless the intent to do so is clear. *Sexton v. Johnson Suburban Utilities, Inc.,* 422 N.E.2d 1293, 1296 (Ind.Ct.App.1981).

At first blush it appears that the two statutes conflict because Indiana Code sec-

tion 9–22–5–15(a) seemingly has an unlimited amount that a firm may charge for storage fees, whereas Indiana Code section 32–33–10–5(b) places a $1500 limit on the fees that may be charged. However, Indiana Code section 9–22–5–15(a) applies when the vehicle's owner *requests* labor, storage or performs repair work. Conversely, no such language is included in Indiana Code section 32–33–10–5(b).

The parties do not dispute that Frances did not request that her vehicle be stored at Northwest. In fact, the evidence showed that the Muncie Police Department initially requested Northwest to store the vehicle in October 2006. And on November 16, 2006, the trial court issued an order for the vehicle's continued storage pursuant to Steven's request.

For all of these reasons, Northwest cannot proceed against Frances under Indiana Code section 9–22–5–15(a) to recover the full amount of the storage fees that it is allegedly due. To hold otherwise would permit Northwest to proceed with a lien that would effectively ignore the specific limitations and circumvent the statutory cap that became effective in 2005. As a result, Indiana code section 32–33–10–5 controls, and Northwest may only recover up to $1500 in storage fees from Frances.[4]

### C. Transfer of Title

■ Northwest next contends that the trial court's order requiring it to transfer the vehicle title back to Frances violated its statutory and due process rights. Northwest asserts that it properly obtained title to the vehicle because it decided to foreclose on the lien that it held on the vehicle as a result of the incurred storage fees.

We note that Northwest's only argument is support of its contention is that it "presumably acted under the provisions of I.C. 9–22–5–15," when it originally obtained title to the vehicle. Appellant's Br. p. 6. Northwest directs us to no authority on its claim that the trial court abused its discretion in ordering the title transferred back to Frances.

We also note that Northwest did not present any evidence at the hearing indicating that it had properly obtained a title to Frances's vehicle in the first instance. And, as the trial court specifically found, the evidence demonstrated that Northwest had the vehicle titled in its name after the trial court had already ordered it to return the vehicle to Frances.

In our view, because Northwest has failed to show that it properly titled the vehicle in its name and, even more compelling, proceeded to have it titled in its name *after* the trial court had already ordered it returned to Frances, we can only conclude that the trial court properly exercised its discretion in ordering Northwest to transfer title back to Frances.

### III. Cross–Appeal

■ Although we have concluded that Northwest may recover an amount that does not exceed $1500 in storage fees from Frances, Frances asserts in her cross-appeal that she should not be liable for any amount of the storage fees that were incurred. In essence, Frances claims that she can avoid liability for storage fees because it was her son's conduct that caused the fees to be incurred.

Notwithstanding Frances's contention, we note that in *Jones v. Harner*, 684 N.E.2d 560 (Ind.Ct.App.1997), the trial

---

4. The trial court's order also indicates that Northwest can negotiate with the City of Muncie as to any additional fees that it desires to collect. Appellant's App. p. 30. We make that same observation and make no comment as to any action that Northwest might have against Steven for storage fees.

court determined that a storage provider held valid liens against a vehicle and was entitled to $9,099 for the towing and storage charges, plus $2156 in attorney's fees. *Id.* at 562. On appeal, we recognized that a towing and storage facility was entitled to a lien even though the vehicle owner did not initially request or consent to the towing and storage of his vehicle but the owner knew that the services were being provided and allowed the storage to continue. More particularly, we observed that

> The record reveals that although Jones initially did not request nor consent to the towing and storage of his vehicle he became aware that Harner had provided these services shortly after the towing occurred. Jones did not make a demand for the return of his vehicle but instead agreed to the charges and allowed the continued storage. The trial court found that Jones's "waiver, acquiescence and inaction in allowing the continued storage (after his contact with Harner and his promise to pay the storage charges) constitutes his implied consent to the storage." Record at 86. The record supports the trial court's finding. Harner retained possession of the vehicle throughout these proceedings, and thus he is entitled to a lien in the amount of the services rendered pursuant to I.C. § 9–22–5–15.

*Id.* at 562–63.[5] In light of the above, we affirmed the award for the towing and storage charges, but reversed the award of attorney's fees because the applicable mechanic's lien statute did not provide for those fees. *Id.* at 563.

As pointed out above, it was the Muncie Police Department that made the initial request for Northwest to store the vehicle. And it was Steven who made the subsequent request to store it prior to trial. However, neither Steven nor Frances requested the vehicle's return at the sentencing hearing, even though they both knew that Northwest was continuing to store it. Indeed, the record demonstrates that Frances telephoned the trial court and inquired about the vehicle's return after Steven's appeal was resolved on June 30, 2008. Appellant's App. p. 29.

As in *Jones,* the trial court could reasonably infer that both Frances and Steven acquiesced in and permitted the continued storage of the vehicle. Therefore, we cannot say that the trial court abused its discretion in ordering Frances to pay the storage fees from August 27, 2007—the date on which Steven was sentenced—until the trial court ordered Northwest to return the vehicle to her on October 28, 2008.

Finally, although we do not quarrel with Frances's assertion that Northwest could have requested a judgment against Steven, we agree with Northwest's contention that it was not limited to such a remedy. As discussed above, the trial court properly ordered Frances to pay Northwest's storage fees in the amount of $1500. Thus, Frances's cross-claim fails.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.

---

5. Although we concluded that Harner was apparently entitled to recover the full amount of its towing and storage charges, it is essential to note that *Jones* was decided prior to the adoption of Indiana Code section 32–33–10–5 in 2005 that placed the $1500 "cap" on storage fees.